And we move to the last case this morning, Ray v. Saul. Thank you, your honor. May it please the court, my name is Randall Forbes. I represent the disability claimant. I recognize you, Mr. Forbes, this is not the first time you've been before this court. Yes, that's true, your honor. I just like to stick to the script a little bit. Probably times 150 or 200, Mr. Forbes. I think maybe 50. I don't know. Okay. We see a lot. I'm not the, I did not do the hearing at the administrative level. I'm not even the primary briefer. I was pulled in because of a scheduling conflict. I thought you were introducing yourself for my benefit. No, welcome, your honor. Thank you. Are you related to Rodney Forbes? Yes, he is my younger brother. I have three younger brothers. He's the only one that was wise enough or foolish enough to become an attorney also. I wanted to apologize for the error that we made. We left out the word no in front of the word loosening of pedicle screws in the brief. And we mentioned that error in the reply brief. And I also noticed that none of the parties had cited the Carr decision, which is Judge Scudder's opinion, the court's opinion, that occurred about six weeks ago, which may be tangentially relevant. So I'm prepared to discuss that also if need be. The standard of review is de novo, which means that the court looks at the ALJ decision or whatever the final decision of the commissioner is. In addition to that, the standard is substantial evidence, which means that, well, I don't need to explain that. That's in the brief and we all know it. This case in one sense has to do with when the date last insured is. And it's 12-31-2017. And the thing I want to bring up about the concept of the date last insured, it's not like a buzzer in a basketball game, except in maybe very few circumstances. For example, if there's a traumatic injury, and it's that injury that obviously results in disability, then in one sense, and that happens after the date last insured, in one sense the date last insured is like a buzzer in a basketball game. But in the cases where the progress of the disease is gradual, the date last insured, yeah, you have to prove disability before that. But just because something medically happens right after the date last insured or close, doesn't mean that it's totally out of the picture. And I really think that the medical expert that testified at the hearing who essentially said that the claimant met a list or equal the listing in early 2018 and the treating physician who issued the report in April 2018, those actually, I think, provide evidence or inferences that this claimant was having a really hard time of it at the end, before the 2017 ended. So that's the comment on the date last insured. Mr. Forbes, can I pause you on that? I actually think that's a really important point, and I'm grateful you raised it. The ALJ here seems to have read its, I'm going to mess up the name, the Dr. J, Jilhawar, or Jilawar, I'm not sure how you say it. The ALJ seems to have said, well, the evidence that here Mr. Ray found himself in a wheelchair because of these back problems, that didn't really pop until February of 2018, and therefore a month or two beyond the date last insured. Your point is, though, if I understand it, that throughout the relevant period here, there is absolutely no question that he has serious back problems. In other words, he's not confined to a wheelchair on a going forward basis in February of 2018 because of a car accident that occurred in February of 2018. Is that the point you're making? That's the point I'm trying to make. Help me out here. You know the law in this area very well. What authority best supports that? The point about the progression in this individual's medical condition, it hit a tipping point, but it was on its way during the relevant period. Well, I don't know if I can point to a legal authority that specifically gets to that point, but actually there is. When the ALJ is looking at all the evidence, it's not the substantial evidence standard that he's going by. It is a preponderance. The burden of proof is a preponderance of the evidence. And when you put all of this stuff together, I believe it preponderates. And that's really the only conclusion one can reach. You've got an arduous work history. I mean, we're talking jobs where he did heavy work for many, many years. You have a fusion in 2012. They got to take the hardware out in, I think that was early 2016. He's also on probably the most powerful drugs he can be on, and the pain is still surpassing the pain medication's ability to... Am I right that they didn't remove the hardware because he was doing so well? That's correct. Right. They removed the hardware because they thought that doing that would actually mitigate, alleviate pain, chronic pain that he was experiencing. Yeah, I believe that's correct, Your Honor. I would like to reserve the rest of my time if I could. Sure, Mr. Forbes. Thank you. Ms. Hahn? Good morning, Your Honors. May it please the Court. Mr. Forbes, Lou Hahn on behalf of the Commissioner of Social Security. I'll start with the issue that Mr. Forbes and Your Honors talked about for most of his time, which is this three-year period between January 2015 and December 31, 2017. The ALJ here in her decision supported it with substantial evidence, which included three medical source opinions, two from the medical consultants from the state agency, as well as the testifying medical expert, the Dr. Jilhawar that Judge Scudder mentioned in his questioning. The standard that this Court applies, and as Mr. Forbes alluded to, is substantial evidence, which means that for this Court to send this case back, it would have to find that what the ALJ did here was completely outside of the realm of reason, that no reasonable mind could have looked at all the evidence that Mr. But here, and it's not always the case, the ALJ consulted an independent medical expert. Dr. Jilhawar, who answered questions from the ALJ, as well as from Mr. Ray's attorney, talked about the fact that Mr. Ray had had a history of back pain. In fact, Mr. Ray's own doctor, Dr. Diane Zaragoza, talked about back surgeries and pain predating the alleged onset of disability by over 10 years, perhaps going back as far as 2004. But Dr. Jilhawar, the medical expert, testified that in his review of the entire medical record, there was no medical necessity and support for the more severe limitations, such as using a cane or the need for a wheelchair, until a couple of months after the expiration of the insured status. So in this case, Mr. Ray needed to show prior to December 2017 that he met the definition of disability, and the ALJ, looking at all the evidence, found that he had not. What the ALJ did was not unreasonable. Mr. Forbes, in the briefing, has pointed to a lot of the records in the transcript, but that's, again, quibbling with how an ALJ engaged in her fact-finding. This body is not the fact-finder in the first instance. As your owners realize, you're looking at whether the ALJ did something so unreasonable with the facts. For example, did the ALJ ignore an entire line of medical evidence? And the answer to that is no. The ALJ understood the history of back impairment that Mr. Ray had. In fact, notably, the ALJ limited him to the least rigorous level of work, exertionally sedentary work, and assessed additional limitations that were supported and matched the opinions of the three medical sources. Therefore, the ALJ's opinion in this case is supported by the facts. Any debate on how she weighed the facts is simply that, a request that this court reweigh the facts, which, as your owners know, the case law says definitively this court will not do. We realize that Mr. Ray has, in 2018, now his status has changed. Starting in the early part of that year, he's begun to use a wheelchair. As I know Mr. Forbes is aware, there is another form of disability insurance, supplemental security income. The case at hand right now before the court is really just about this period of time between January 2015 and the end of the year 2017. What about Mr. Forbes's point that the better way to look at this evidence is as reflecting an individual here who worked very hard throughout his life and was experiencing an increasing amount of back distress and back pain. It was progressively worsening. Yeah, the commissioner is certainly right to describe and recount Dr. Gilloir's opinion, but the fact of the matter is this situation was worsening over the relevant period. He eventually hits the point where he needs a cane. He has the second surgery. It's not getting any better at all. It seems close to me to say we're just going to, you know, you basically have got a one-month period. January of 2018, he said he's missed this by 30 days as an evidentiary matter against the backdrop of a record that I think unquestionably shows progressive deterioration with his back. Respectfully, Your Honor, on the issue of whether it's unquestionable, we would hold that it is, again, something that reasonable minds can differ on. With respect to that last year, 2017. I guess the way to put the question is do you think the ALJ just missed this? And if not, where do you think the ALJ captures this observation? Because I think Mr. Forbes is right to kind of, you know, put you at your paces on this issue. No, the ALJ did not miss this. The ALJ talked about, for example, the 2016 hardware removal by neurosurgeon Dr. Hall. The ALJ talked about the 2017 notes. Throughout the final year of disability insurance status, Mr. Ray saw Dr. Zaragoza numerous times. And the treatment notes from January, May, and September of 2017, those notes by Dr. Zaragoza actually do not mention a cane. The ALJ looked at all she had, of course, was medical evidence that Mr. Ray furnished in support of his application for disability. And she looked at it. And as this court is well aware, she was not held to the standard of mentioning every single record that was in the transcript. But it is very clear, looking at the ALJ's decision, that she understood the severity of Mr. Ray's back impairments, which is why she limited them to sedentary work. The ALJ did not miss an entire line of evidence with regard to the potential worsening of his condition. In fact, in August 2015, Mr. Ray, this is earlier in this period, had gone to Dr. Zaragoza after another neurosurgeon not named in that particular note had actually said that surgery was not necessary. In December 2015, Mr. Ray saw a physician assistant, Ms. Eleftheri. And in that visit, also, Mr. Ray talked about how he wanted surgery, despite having recommendations from other sources that surgery was not necessary. We understand that Mr. Ray complained about pain, complained about it consistently. As your honors know, the regulations which this ALJ followed closely in her decision, regulation in particular 404.1529, in that regulation, which has to do with subjective symptom evaluation, it says very clearly that an individual's own reports of pain cannot by themselves be enough to satisfy the standard to show disability. And that comes from the act itself, and that's what ALJs are applying when they look at this evidence. The ALJ understood that Mr. Ray had numerous complaints of pain, sought care from physician assistants, doctors, and a neurosurgeon. The ALJ, in fact, even went so far as to get an independent medical expert to weigh in at the hearing in 2018. But your honors, it is our position that the ALJ here looked at the record, as Mr. Ray, with the help of his attorney, provided, and determined that prior to the expiration of his insured status, he simply failed to meet that standard under the act and under the regs of showing that he was unable to do any level of work. And here, the ALJ limited him to the lowest level of exertional work, sedentary. And a vocational expert said that there still were jobs in the national economy he could do. Unless your honors have any additional questions, I thank you for your time and attention. We ask that you affirm the ALJ's decision. Thank you, Ms. Hahn. Mr. Forrest? I believe when she mentions the act and subjective symptoms, those are subjective symptoms not connected to an impairment. Here, the subjective symptoms are connected to a medically determinable impairment that is documented by all sorts of objective evidence. So, second, the treating physician issued an opinion on May 6, 2015. And that opinion provides a baseline as to how this thing worsened. That opinion also essentially had work-preclusive limitations. But that's a record AR-416. And it's not totally based on subjective information from the patient. She said, on the last evaluation in my office, Mr. Ray was unable to stay in one position for more than five minutes due to extreme pain and constant need to change positions. So, in one sense, that's the baseline. The hardware removal falls in between. And then the problems progress. I don't believe this case is anywhere in the briefing. But if I can direct the court towards Thomas B. I think it's Thomas B. Colvin. Judge Posner issued it. And basically, it has a comment in there that sciatica just doesn't always show up on imaging. They know it's there based on the presentation or based on… Anyways, sometimes it's an elusive pain. Finally, there is a problem with Chenery that we brought up. And we'll rely on the briefs for all the other issues because I'm out of time. Thank you, Your Honor. Thank you, Mr. Forbes. Thanks to both counsel. And the case will be taken under advisement. And the court will be in recess. Thank you.